**Martha SALE et vir, Appellants,**

v.

**W. H. STANLEY et al., Appellees.**

No. 13596.

Court of Civil Appeals of Texas.
Houston.

July 20, 1961.

Rehearing Denied Sept. 7, 1961.

Eugene A. Smith, Barrow, Bland & Rehmet, Vincent W. Rehmet, Houston, for appellants.

Hicks, Dollahon, Boss & Wohlt, Willard E. Dollahon, Houston, for appellees.

BELL, Chief Justice.

Mrs. Martha Sale and her husband brought suit against W. H. Stanley and his daughter, Nancy J. Stanley Gammage, joining her husband, James E. Gammage, Jr. The object of the suit was to recover damages resulting to Mrs. Sale from injuries received by her when she, a pedestrian, and an automobile driven by Mrs. Gammage were in collision. The collision occurred prior to Mrs. Gammage's marriage. In a trial before a jury, the jury convicted Mrs. Gammage of negligence in particulars not necessary to notice and found in response to Issue No. 14 that Mrs. Sale failed to keep a proper lookout, and in response to Issue No. 15 that such failure was a proximate cause of the collision. The court rendered judgment on the verdict that appellants take nothing by their suit.

Appellants make four complaints here. First, they say the jury finding that Mrs. Sale failed to keep a proper lookout is contrary to the overwhelming weight and preponderance of the evidence. Second, they say the same is true of the jury's answer finding such failure to be a proximate cause. Third, they say Issue No. 14 as submitted constituted a comment on the weight of the evidence. Fourth, they say the $3,000 awarded as damages is so grossly inadequate as to reflect the jury was actuated by prejudice against appellants so as to taint the other findings of the jury against appellants.

We are of the view that the jury's answers that Mrs. Sale failed to keep a proper lookout and that such failure was a proximate cause of the collision are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

The collision occurred at the intersection of Almeda Road and Cleburne Street. Almeda Road runs north and south. It is 54 feet wide. Cleburne runs east and west. It is 32 feet wide. Mrs. Gammage was driving the automobile that was in collision with Mrs. Sale. Mrs. Gammage, who was driving north, had turned left at the intersection and the collision occurred a foot or two west of the west curb line, as projected across Cleburne, of Almeda Road. Mrs. Sale was walking north across Cleburne. The intersection was controlled by signal lights.

Mrs. Sale testified she had been grocery shopping. She was proceeding north on the sidewalk running on the west side of Almeda Road. Just as she reached the intersection of Cleburne and Almeda the traffic control signal changed from red to green controlling the flow of traffic moving north and south on Almeda. At that time she saw two automobiles on Almeda, one of which was driven by Mrs. Gammage, facing north and stopped for the signal light. She proceeded to cross in the proper pedestrian lane (there was no marked crosswalk) and was probably about two feet west of a line projected across Cleburne of the west curb line of Almeda. The weather was wet. It had been showering heavily off and on throughout the day. The accident occurred about 1 p. m. However, at the time it was not raining, but it was misting slightly. She had an umbrella which she held high above her head to keep the mist off her eyeglasses. However, she had full view around her. As she walked across the intersection she looked at the signal light and would glance back and to the side observing traffic on Almeda. As she got two or three steps from the center of Cleburne, there was a van type truck on Almeda traveling south. As she reached about the center of Cleburne, the truck passed. As Mrs. Sale was two or three steps past the middle of Cleburne, Mrs. Gammage made a left turn into Cleburne and was right on her so that she had no time to move backward or forward. The

Gammage car, the right front, hit her. She remembers nothing further. Under her testimony, she was at all times keeping a lookout and saw Mrs. Gammage's automobile at all times material.

Mrs. Gammage testified that she was stopped for the red traffic light on Almeda. There were two automobiles in front of her. As the light facing her changed to green, one automobile went north on Almeda. One of them made a left turn into Cleburne. She pulled up behind the one that was to turn left and remained there after such automobile turned left, to allow the on-coming truck to pass. She was nearly at the center of Cleburne, but not quite. As the truck passed, she made her left turn and as she did she saw Mrs. Sale about the center of the street. She immediately threw on her brakes. Her automobile proceeded to a stop just over the line projected across Cleburne from the west curb line of Almeda. Her automobile was at an angle, the front facing a little to the northwest. Mrs. Sale just walked into her automobile on the left side, about a foot behind the headlight, and stumbled and fell at an angle in front of the car. The automobile was stopped. She had previously seen Mrs. Sale as she was proceeding to cross Cleburne. It was raining and Mrs. Sale had her umbrella up. She had it in a position between her and Mrs. Gammage so that Mrs. Gammage could not see the upper part of Mrs. Sale's body. She could not see her head and face. Mrs. Sale was also carrying a bag of groceries. Mrs. Sale never changed her pace as she crossed the street.

It should here be specifically noted that the jury found in response to Special Issue No. 16 that Mrs. Sale was not carrying her umbrella in a manner which obstructed her view of the vehicle driven by Mrs. Gammage at the time Mrs. Gammage made her left turn. The testimony of Mrs. Gammage that Mrs. Sale was carrying her umbrella in a manner that obstructed her view of the vehicle, therefore, becomes immaterial to our inquiry as to whether the answer of the

jury that Mrs. Sale failed to keep a proper lookout is insufficiently supported by the evidence.

Mr. Sullins, the investigating police officer, said Mrs. Gammage told him that when she started her left-hand turn she saw Mrs. Sale crossing Cleburne; that she threw on her brakes and the left front of her car struck Mrs. Sale. She did not say her automobile was stopped and that Mrs. Sale ran into the left side. She did not mention Mrs. Sale was carrying an umbrella. When he arrived about 1:20 it was raining pretty hard. It had been raining off and on all morning.

Johnnie Northington was working at the filling station located on the northwest corner of Cleburne and Almeda. He did not see the accident. He heard the noise from the impact. He looked up and saw a lady (Mrs. Sale) lying almost in the gutter on the north side of Cleburne. Her head was pointing toward Almeda and her feet toward the gutter. She was 10 or 12 feet west of Almeda. She was in front of the automobile that was sitting at an angle back toward Almeda. He didn't think it was raining at the time.

Mrs. Cleo Thames was working at the Dickson Scenic Co. near the intersection. She did not see the collision. After the accident she saw Mrs. Sale lying in the street. She went to the scene and Mrs. Sale was lying near the gutter. She was lying about 20 feet west of Almeda. She was lying right at the driveway of the filling station. It was not raining but was sprinkling a little bit.

Mrs. Leona McHenry was also working at Dickson Scenic Co. She was looking out of the window and saw Mrs. Sale coming across Cleburne. She saw Mrs. Gammage make the turn and hit Mrs. Sale. The front end of the car hit Mrs. Sale and she was knocked about 25 feet. It looked to her like Mrs. Sale was knocked on the curb. It was drizzling rain at the time. She did not go out to the scene until Mrs. Sale had been put in Mrs. Gammage's automobile.

She noticed no umbrella. She could see Mrs. Sale's entire body as she crossed the street. Mrs. Sale's body came to rest in the drain. She was 8 to 10 feet from the north curb when she was hit. When Mrs. McHenry saw Mrs. Sale first she was about to the center of Cleburne. The car that hit Mrs. Sale was behind her. The automobile was facing up Cleburne and more toward the filling station.

Dr. Burge testified Mrs. Sale received multiple fractures of the pelvis, fractures across the sacrum and possible fracture (posterior) of the eighth rib. These of course were the major injuries though there was damage to the muscles, ligaments and tendons.

Appellees in their brief, in discussing the evidence, stress that while Mrs. Sale testified she was keeping a lookout, the jury had a right to reject her testimony. They then proceed to point out what they call inconsistencies in her testimony and conclude that obviously because of such inconsistencies the jury found as it did. They also point to Mrs. Gammage's testimony about the umbrella and that Mrs. Sale ran into the left fender of the automobile. As stated before, however, the testimony about the umbrella becomes immaterial in the light of the jury's answer to Special Issue No. 16. Even if the jury disbelieved Mrs. Sale as to her testimony on keeping of a proper lookout, this of itself does not establish that she was not keeping a proper lookout. There must be evidence, either direct or circumstantial, that she was not keeping a proper lookout. Dewhurst v. South Texas Rendering Co., Tex.Civ.App., 232 S.W.2d 135, n. r. e.; Dixon v. Burling, Tex.Civ.App., 277 S.W.2d 957, no writ hist.

The only evidence, as we read the record, that would tend to establish Mrs. Sale was not keeping a proper lookout is the testimony of Mrs. Gammage that Mrs. Sale walked into the left side of the car at a point about a foot back of the headlight. While this is sufficient to raise the issue, it is very slight testimony in the light of all of the testimony. All of Mrs. Gam-

mage's testimony that Mrs. Sale was not looking was inseparably tied to her testimony that Mrs. Sale could not see her because of the position of the umbrella and yet the jury found Mrs. Sale was not holding the umbrella at an angle that obstructed her vision. Too, we think Mrs. Sale's testimony may not be totally disregarded because it was corroborated to a great extent by Mrs. Gammage. Mrs. Sale testified in substance, as did Mrs. Gammage, about the traffic on Almeda Road to Mrs. Sale's right that was proceeding south. She testified, as did Mrs. Gammage, about Mrs. Gammage's automobile being stopped on Almeda for the red light. They testified substantially the same as to the other automobile proceeding on north. They testified substantially the same as to the truck that Mrs. Gammage allowed to pass before she turned to the left. It is true Mrs. Sale did not see another automobile turn left on Cleburne ahead of Mrs. Gammage, which Mrs. Gammage testified about. However, on the whole the testimony of Mrs. Sale about the matters just outlined is the same as Mrs. Gammage's and if she had not been keeping a lookout she could not have known these things that Mrs. Gammage herself testified to. Additionally, Mrs. Gammage's testimony that Mrs. Sale ran into the left fender of her automobile about a foot behind the headlight is inconsistent with the physical facts existing immediately following the accident. Mrs. Sale did not fall backward or straight west as she probably would have done had she run into the left side. She was apparently knocked in a northwesterly direction to the gutter on the north side of Cleburne. Mrs. Gammage's automobile was at a slight angle, facing toward the northwest. Mrs. Gammage testified she did not go quite to the center of the intersection before making her turn. Moreover, one witness who saw the collision testified the front of the automobile hit Mrs. Sale and Mrs. Sale said the right front of the automobile hit her right side. The physical facts support a conclusion that she did not run into the left side of the car, thus overcoming Mrs. Gammage's testimony in this regard.

With regard to failure to keep a proper lookout, in addition to the physical facts set out above, it is noted that Mrs. Gammage testified that as she made her turn she saw Mrs. Sale and immediately threw on her brakes but could not stop the automobile until it had crossed into Cleburne just across the west line of Almeda. Mrs. Sale at the time was just across the center of Cleburne. Reason dictates that in the brief moment Mrs. Sale had to act she could not have avoided the accident. The physical facts strongly suggest that she was past the center line and the automobile was coming at an angle slightly behind her. She really had no time to do anything to take her out of the path of the automobile.

Special Issue No. 14 was not a comment on the weight of the evidence. Our disposition of the case makes is unnecessary to pass on the question as to whether the damages were so inordinately low as to require reversal.

The judgment of the Trial Court is reversed and remanded.